MINNET, JAMES F., Associate Judge.
These are timely appeals by the plaintiff, Mark Anthony Scott, a minor, by and through his next friend, W. A. Scott, and W. A. Scott, individually, and W. A. Scott, from final judgments entered in favor of the defendants, W. Potier, G & P Trucking Inc. and Richard Earl Foults. These appeals encompass two cases which have been consolidated by order of this court.
This cause arose from a head-on collision on State Road 700 in Palm Beach County, Florida, on July 22, 1963, at four o’clock p. m. The plaintiff, Mark Anthony Scott, his mother, and another party were passengers in a car driven by a Mrs. Barfield. D. W. Potier, G & P Trucking Co., Inc. and Richard Earl Foults were the owner, lessee and driver, respectively, of the semi-trailer truck. On the day of the accident the Bar-field automobile and the truck in which the defendant, Foults, was driving were proceeding in opposite directions on State Road 700, which is a straight two-lane flat road with a slight curve bordered on both sides by canals. The truck was traveling at approximately 45 to 50 m. p. h. and the car was proceeding between 55 and 60 m. p. h. As the truck approached the curve it reduced speed to 40 m. p. h. The Bar- *593 field car as it negotiated the curve was on the wrong side of the road. This apparently was seen by defendant-driver who immediately blew his horn and applied his brakes. Although Mrs. Barfield tried to return her car to the right side of the road a head-on collision occurred near the center of the roadway. Shirley Scott and Mrs. Barfield were killed in this accident.
Plaintiffs sued the defendants and Bar-field by filing separate complaints alleging simple negligence against the defendants and gross negligence against Barfield as owner of the car involved in the collision. The defendants answered denying all material allegations. The cause came on to trial before a jury, and the jury entered its verdict against the defendant, Barfield, and found for the defendants and against the plaintiffs. Plaintiffs moved for a new trial on the sole issue of the defendants’ liability to the plaintiffs. This motion was denied. A final judgment was entered upon the jury verdict, and it is from this final judgment that plaintiffs now appeal.
Plaintiffs’ first contention on appeal is that the trial court erred in its instructions because of contradictory principles of law which therefore confused and misled the jury. The two doctrines are called “Sudden Emergency” and the theory of “Unavoidable Accident”. The doctrine of sudden emergency like that of unavoidable accident is an ultimate conclusion of fact, and for either or both to be given there must be sufficient facts relating to the application of these doctrines. If a factual situation exists which leads one to the conclusion of sudden emergency, it may follow that an unavoidable accident may result. Yet, an unavoidable accident can occur without a sudden emergency. Plaintiffs contend that the doctrine of unavoidable accident involves no negligence and should not be given where there is a question of negligence.
This is true, however. The court, in its judgment, had reached the opinion that the jury should consider the applicability of one or both doctrines even though it clearly appeared that the defendant, Foults, was driving in his own lane which, of course, suggested that he was free from negligence.
The “unavoidable” part of this accident, therefore, could not come into play until after the deceased had put her car in the wrong lane, when then, and at that time, we began to determine what would a prudent man do in the circumstances to measure negligence of either party. While it is recognized that, ordinarily, the two instructions are not given because unavoidable accident implies no actual negligence by either party, yet, with a head-on collision and the driver of the car in the wrong lane having been killed, it is difficult to ascertain what circumstances caused the deceased’s car to be there.
The “Sudden Emergency” doctrine hinges upon a factual situation which leads one to the conclusion that these two words suggest. Obviously, at the time the defendant, Foults, realized that the deceased’s car was in his lane, an emergency was created, and it was then that foresight, skill and care had to be employed by both drivers if a collision was to be avoided.
In Retty v. Troy, Fla.App.1966, 188 So.2d 568, 572, the court quotes from 65 C.J.S. Negligence, § 21, by defining an unavoidable accident as follows:
“ ‘Unavoidable accident does not necessarily mean one which it is physically impossible in the nature of things for defendant to have prevented, but one in which ordinary care and diligence could not have prevented the happening of the things that did happen; one which could not have been foreseen or prevented; and in this sense the term is held to be equivalent to, or synonymous with, “mere accident” or “pure accident.” An unavoidable accident is one which occurs while all persons concerned are exercising ordinary care, that is, one not caused by the *594 fault of any of the persons; if the accident producing- the injury could have been prevented by either person by. means suggested by common prudence it is not deemed unavoidable. The question of unavoidable accident is entirely different in its nature from the question of negligence and proximate cause.
“ ‘It is impossible to announce a fixed rule applicable to all cases by which it can be decided just when the issue of unavoidable accident is presented. In order to determine whether such issue is involved, the facts of each particular case must be examined with the view of ascertaining whether there is presented a theory under which the accident could have happened, notwithstanding all the persons concerned exercised the degree of care required by law.’ ”
The foregoing case also refers to Tropical Exterminators, Inc. v. Murray, Fla.App.1965, 171 So.2d 432, which holds that the principle of the “Unavoidable Accident Law” is applicable when “the element of proximate cause is lacking because there is no causal connection between his (the person charged) acts and the damages sustained (by the person injured). * * *”
It has been and will be stated over and over again that under our rules of law the jury has the fact-finding burden. Here the jury had the opportunity to hear the testimony and to view such evidence as photographs, as well as to consider the total of the court’s charge which, in this instance, covered 34 pages.
As we review this matter, if any prejudices were created they would operate against the defendant-truck driver in favor of the plaintiff concerning the applicability of the two doctrines.
A second point of error directs itself to the claim that the court refused to instruct the jury on a driver’s duty to avoid a collision with an oncoming vehicle when said oncoming vehicle is in the wrong lane. A review of this portion of the instruction of the trial court is in the circumstances sufficient when coupled with all other facets of the trial, and we, therefore, find no error on this point or any departure from essential instructions.
Lastly, the plaintiffs contend that testimony of the defendant-truck driver setting forth his version of what might have been done or what he would have done had he been the driver of the vehicle which collided with his truck—these words are as follows:
“But she had plenty of time and if she had stayed on that side she could have gone by. She had plenty of room to by-pass me. She would have hit maybe the trailer a little bit, but she wouldn’t have done what she did do. She had plenty of room to stay on my side of the road. * * *, but she could have made it and she would still be with us today.”
The court in excluding the foregoing testimony was correct. The truck driver’s testimony of what he saw or observed is relevant. When it leaves this field and enters into that of opinion or supposition, it invades the province of the jury. As stated above, the jury received all the evidence which enabled it to reach the decision that it did.
Our review of the charges of the trial court clearly establishes a setting forth of all the essential ingredients relative to, and pertaining to negligence. We find no basis to charge a departure from the essential requirements of law to claim that the jury received insufficient testimony to mislead them, or an overabundance of charges to confuse them.
Finding no reversible error, the judgment of the lower court is affirmed.
Affirmed.
ANDREWS and CROSS, JJ., concur.